The STATE of Ohio, Appellee,

v.

FERGUSON, Appellant.

[Cite as *State v. Ferguson* (1991), 72 Ohio App.3d 714.]

Court of Appeals of Ohio,
Seneca County.

No. 13–89–46.

Decided Feb. 26, 1991.

*Paul F. Kutscher, Jr.*, Prosecuting Attorney, and *Susan Hering Howard*, for appellee.

*Randall M. Dana*, Ohio Public Defender, and *George H. Lancaster, Jr.*, for appellant.

THOMAS F. BRYANT, Presiding Judge.

This is an appeal from the judgment of the Court of Common Pleas of Seneca County revoking appellant's shock probation.

On September 11, 1989, appellant Brian Ferguson went to his probation officer's office to provide her with a urine specimen for drug testing. Upon failing the test for cocaine use, appellant was arrested on September 15, 1989. A hearing on probation revocation was held October 19, 1989. Following the hearing, the trial court revoked appellant's probation and ordered his incarceration for the remainder of the terms from which he had been granted probation. Appellant now asserts four assignments of error. The first assignment of error is:

"The trial court erred in admitting testimony regarding appellant's statements concerning his cocaine use where appellant was in custody and was not informed of his constitutional rights as enunciated in *Miranda v. Arizona* (1966), 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]."

On September 25, 1989, Mary Beck Wright, appellant's probation officer, interviewed appellant at the Miami County Jail. Wright questioned appellant about his use of cocaine. Appellant informed Wright that he did use cocaine and estimated that use at about once or twice per month during his probation. Appellant's statements to Wright were introduced at the probation revocation hearing over the objection of defense counsel. Appellant now appeals the introduction of this testimony, claiming the conversation cannot be introduced into evidence since appellant was not given a *Miranda* warning prior to the conversation with his probation officer, Wright.

" * * * Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 [93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661–662] (1973); *United States v. Johnson*, 455 F.2d 932, 933 (CA5), cert. denied, 409 U.S. 856 [93 S.Ct. 136, 34 L.Ed.2d 101] (1972). Just as there is no right to a jury trial before

probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer.  * * *

"Our cases indicate, moreover, that a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' *Sanitation Men v. Commissioner of Sanitation,* 392 U.S. 280, 284 [88 S.Ct. 1917, 1920, 20 L.Ed.2d 1089, 1093] (1968); see *Lefkowitz v. Cunningham,* 431 U.S. 801, 805–806 [97 S.Ct. 2132, 2135–2136, 53 L.Ed.2d 1, 7] (1977); *Lefkowitz v. Turley,* 414 U.S. 70, 84–85 [94 S.Ct. 316, 325–326, 38 L.Ed.2d 274, 286] (1973); *Gardner v. Broderick,* 392 U.S. 273, 278 [88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082, 1086–1087] (1968), and nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as 'one of a number of factors to be considered by the finder of fact' in deciding whether other conditions of probation have been violated. *Lefkowitz v. Cunningham, supra,* at 808[, 97 S.Ct. at 2137, 53 L.Ed.2d at 9], n. 5.  See *Baxter v. Palmigiano,* 425 U.S. 308, 317–318 [96 S.Ct. 1551, 1557–1558, 47 L.Ed.2d 810, 821] (1976)." *Minnesota v. Murphy* (1984), 465 U.S. 420, 435, 104 S.Ct. 1136, 1146–1147, 79 L.Ed.2d 409, 425, fn. 7.

One of the conditions of appellant's shock probation as journalized in the trial court's judgment entry of January 18, 1989 was to submit to drug testing at the option of the probation department.  Ostensibly, this was to ensure that appellant was not engaging in drug use.  The drug test administered on September 18, 1989 and the resulting conversation with Wright following his arrest were for the purpose of administering the terms of appellant's probation.  No additional criminal charges were instituted against appellant as a result of the failed drug test or his conversation with Wright.  Under these circumstances, as articulated by the United States Supreme Court in *Murphy,* there is no privilege against compelled self-incrimination and therefore no requirement that a *Miranda* warning be given in order for the resulting conversation between appellant and Wright to be admitted at a probation revocation hearing.  Appellant's first assignment of error is overruled.

Appellant's second assignment of error is:

"The trial court erred in admitting evidence of a positive urinalysis test for cocaine where no evidence was presented to demonstrate that the test was generally accepted within the relevant scientific community or was otherwise reliable thereby depriving appellant of due process of law in violation of

Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."

As noted by appellant, the Rules of Evidence, with the exception of privilege, do not apply to probation revocation proceedings. Evid.R. 101(C)(3). Therefore, in a probation revocation proceeding the admission or exclusion of evidence is discretionary with the court.

Appellant claims that failure by the state to present evidence of acceptance of the testing procedure within the relevant scientific community deprived appellant of due process. As a result, claims appellant, Jennifer George's testimony concerning the testing procedure and the machine used to conduct the test should not have been admitted. George testified she was the one who retrieved the urine sample from the refrigerator, tested the machine to ensure it was working properly, and then conducted the two tests for the presence of drugs. The results of both tests conducted on appellant's urine sample were positive for cocaine use. George testified she had conducted probably over a hundred of these tests.

We find no error in the trial court's decision to admit George's testimony. The stringent Rules of Evidence do not apply to probation revocation hearings and the admission of George's testimony without the support of its acceptance in the scientific community merely goes to the weight and credibility of such testimony and not its admissibility in this proceeding. Furthermore, appellant was given the opportunity to confront and cross-examine this witness, thus preserving his right to due process. Appellant's second assignment of error is overruled.

Appellant's third assignment of error is:

"The trial court erred in failing to provide appellant with a written statement of the evidence relied upon and the reasons for revoking his probation thereby depriving appellant of due process of law in violation of Article I, Section 16, of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."

We have reviewed the six-part due process standard set forth by the United States Supreme Court in *Morrissey v. Brewer* (1972), 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 498–499, as affirmed in *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–1762, 36 L.Ed.2d 656, 664, and adopted by the Ohio Supreme Court in *State v. Delaney* (1984), 11 Ohio St.3d 231, 234–235, 11 OBR 545, 547–548, 465 N.E.2d 72, 75–76. We find that the due process protections articulated in *Gagnon, Morrissey,* and *Delaney, supra,* were met.

The record indicates that the appellant in this case was defending against the claim of cocaine use in violation of his terms of probation. All the evidence presented at the probation revocation hearing addressed only this sole instance of violation. The trial court at the hearing and in its judgment entry stated that upon hearing all the evidence in the case, here the only evidence claimed to violate his probation, probable cause existed to find the appellant violated the terms of his probation. We conclude appellant was sufficiently informed of the reason his probation was revoked. See *State v. Branderburg* (Aug. 22, 1985), Auglaize App. Nos. 2–84–5 and 2–84–6, unreported, 1985 WL 7383. We, therefore, find no error or resulting prejudice on this assignment of error. Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error is:

"The trial court erred in failing to dismiss the probation revocation charges against appellant as the state failed to provide a revocation hearing within a reasonable time thereby depriving appellant of his due process right to a speedy disposition of the charges against him in violation of Article I, Section 16 of the Ohio Constitution and of the Fourteenth Amendment to the United States Constitution."

■ *Coleman v. Stobbs* (1986), 23 Ohio St.3d 137, 23 OBR 292, 491 N.E.2d 1126, sets forth a two-part test for determining if the delay in holding a final revocation hearing was unreasonable.

"First, the court must determine whether the delay was unreasonable. This involves the consideration and balancing of three factors: (1) the length of delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time.' Second, the court must determine 'whether the delay * * * prejudiced the alleged parole violator.' *Id.* at 139, 23 OBR at 293, 491 N.E.2d at 1128." *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 134, 564 N.E.2d 1060, 1063.

We will examine each of these factors in order. Beginning with the length of delay we note appellant was arrested on September 15, 1989 and his revocation hearing was held on October 19, 1989. The only potential explanation for the length of delay, the trial court's backlog, was offered at the October 19, 1989 hearing. Finally, appellant filed a motion for dismissal the morning of the revocation hearing. The motion to dismiss was heard prior to the beginning of the revocation hearing. Taking all these things into consideration, we do not find the thirty-five-day interval between appellant's arrest and the hearing to be unreasonable. If appellant had believed the delay to be unreasonable, presumably he could have filed a motion to dismiss prior to the hearing date.

Having concluded that the delay of hearing was not unreasonable, we next weigh any resulting prejudice occasioned by the delay against the interests protected by the "reasonable time" requirement of R.C. 2967.15 and Ohio Adm.Code 5120:1–1–19(A). "Those interests include: '(1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator, and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing.'" *Flenoy*, 56 Ohio St.3d at 136, 564 N.E.2d at 1065. We cannot say as a matter of law that thirty-five days constitutes oppressive prehearing incarceration. If appellant was suffering anxiety and concern over the alleged parole violation, he could have filed a motion to dismiss or questioned the length of his detention at any time prior to his hearing date of October 19, 1989. Finally, there is no logical or evidentiary support for the argument that appellant might have been better able to offer a defense at a probation revocation hearing held prior to October 19, 1989.

There is no evidence compelling the conclusion that the thirty-five-day delay between appellant's arrest and his revocation hearing was unreasonable or prejudicial. Therefore, appellant's fourth assignment of error is overruled.

For the reasons stated above and upon the authorities cited and discussed, the judgment of the Court of Common Pleas of Seneca County is affirmed.

*Judgment affirmed.*

HADLEY and SHAW, JJ., concur.