THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEBORAH J. NECKOPULOS, Defendant-Appellant.

Third District    Nos. 3—95—0425, 3—95—0426 cons.

Opinion filed November 8, 1996.

Tracy McGonigle, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael Kick, State's Attorney, of Kankakee (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Deborah Neckopulos was charged with unlawful possession of a controlled substance. 720 ILCS 570/402(c) (West 1994). While on bond for this offense, Neckopulos was charged with another count of unlawful possession of a controlled substance. 720 ILCS 570/ 402(c) (West 1994). Neckopulos entered negotiated pleas of guilty to both charges in exchange for the State's agreement not to object to her placement in Treatment Alternatives to Street Crimes (TASC). Neckopulos was sentenced to concurrent 36-month terms of probation conditioned upon her compliance with the TASC program. The State subsequently filed a petition to revoke her probation for failure to cooperate with TASC, resulting in her discharge from the program. After a hearing, the trial court revoked Neckopulos' probation and sentenced her to consecutive sentences of one and three years. Neckopulos appeals the order revoking her probation in each case.

Neckopulos raises the following issues on appeal: (1) whether the trial court erred in revoking her probation because evidence presented by the State demonstrated that her failure to attend TASC meetings was not wilful; (2) whether the trial court erred in revoking her probation because evidence presented by the State demonstrated that she did not have a meaningful opportunity to begin drug treatment for her addiction due to her attendance at only two meetings; (3) whether the trial court erred by permitting the State to call her as a witness during the probation revocation hearing in violation of "An Act to revise the law in relation to criminal jurisprudence" (Criminal Jurisprudence Act or Act) (725 ILCS 125/6 (West 1994)); and (4) whether the trial court violated her fifth amendment privilege against self-incrimination when it compelled her to testify for the State regarding her failure to attend TASC.

At the probation revocation hearing, the court took judicial notice of the fact that Neckopulos was placed on probation conditioned upon her compliance with the TASC program and that the alleged violation was noncompliance with that condition.

The State called Neckopulos as its sole witness. Neckopulos objected to being called as a witness, invoking her fifth amendment privilege against self-incrimination. The trial court ruled that the privilege was unavailable to her because the hearing did not involve a criminal offense but, rather, only a noncriminal allegation of a probation violation. Over Neckopulos' standing objection, the trial court ordered Neckopulos to take the stand.

Neckopulos testified that she had been placed on probation and, as a condition thereof, was obligated to comply with TASC. She also indicated her awareness that the TASC treatment would last 36 months. She stated that she attended Duane Dean Recovery Unit (Duane Dean) as directed by TASC. She was, however, unable to recall either when she visited Duane Dean or the number of those visits. She subsequently stated that she attended on approximately six occasions. She admitted that she stopped attending Duane Dean though she was not directed to do so by TASC.

When again asked by the State whether she was aware that treatment was likely to last for an extended period, Neckopulos responded in the negative and indicated that she had no memory of the State's earlier question concerning the duration of her treatment. Her explanation for this memory failure was that she was an addict whose "brains are not quite right."

She clarified that she was unable to remember the number of times she attended Duane Dean because she was almost constantly high during that time period. She was not aware that she was

required to remain in contact with TASC. She explained that she did not report to TASC because she was unable to think when on cocaine. She was not only unaware of the dates of her appointments, she was unaware what day it was. Finally, Neckopulos testified that despite her efforts she has been unsuccessful in both in-patient and out-patient treatment.

The trial court found that, by her failure to comply with the TASC mandate to complete a course of treatment at Duane Dean, Neckopulos wilfully failed to comply with the terms of probation. The reason for her failure was that her addiction to cocaine deprived her of the reasoning to comply.

■ Neckopulos first argues that the revocation of her probation was improper because the evidence presented by the State failed to demonstrate that her probation violation was wilful. Neckopulos' argument assumes that the State must prove that the probationer wilfully conducted herself in violation of the conditions of probation in order for probation revocation to be proper. This underlying assumption is wholly without supporting authority and simply does not accurately state Illinois law.

Probation is a privilege to be employed when "the defendant's continued presence in society would not be threatening and the defendant's rehabilitation would be enhanced." *People v. Allegri,* 109 Ill. 2d 309, 314, 487 N.E.2d 606, 607 (1985). Due to the fact that the purposes of probation may be frustrated by nonculpable acts, revocation of probation need not be based on the wilful conduct of the defendant. *People v. Davis,* 123 Ill. App. 3d 349, 462 N.E.2d 827 (1984); *Allegri,* 109 Ill. 2d 309, 487 N.E.2d 606. It is apparent from the facts of this case that the purpose of Neckopulos' probation was to enable her to receive treatment for her drug addiction. Her failure to attend this treatment frustrated the purpose of her probation regardless of whether such failure was wilful. As the State was not required to prove that Neckopulos' failure to comply with TASC was wilful, we conclude that any evidence of Neckopulos' incapacity for wilful activity did not render the trial court's revocation of her probation erroneous.

■ Neckopulos next argues that the trial court's revocation of her probation was erroneous because she had not had a meaningful opportunity to begin drug treatment before TASC terminated her from the program. Like the defendants in *People v. Carter,* 165 Ill. App. 3d 169, 518 N.E.2d 1068 (1988), and *People v. Hamelin,* 181 Ill. App. 3d 350, 537 N.E.2d 3 (1989), Neckopulos contends that her probation violation occurred before she had a meaningful opportunity to begin treatment and, therefore, revocation of her probation defeated the

goals of crime prevention and rehabilitation expressed in the Alcoholism and Other Drug Abuse and Dependency Act (the Drug Abuse Act) (formerly Alcohol and Substance Abuse Act). 20 ILCS 301/1.1 *et seq.* (West 1994).

In *Carter,* the defendant had been ordered to participate in an inpatient TASC treatment program. While the defendant was still tenth on a waiting list for admission into the program, he violated his probation by committing a theft and probation was revoked. The appellate court reversed the order revoking probation, finding that the trial court had improperly used its discretion to frustrate the purposes of the Drug Abuse Act because defendant had never had an opportunity to participate in the program prescribed for him by the court.

Similarly, in *Hamelin,* the defendant's probation was revoked before he ever had an opportunity to begin treatment. Hamelin was sentenced to a prison term to be followed by a period of probation under the supervision of TASC to treat his drug addiction. There, the trial court revoked defendant's probation because defendant attempted to bring cocaine into prison. The appellate court reversed, holding that the defendant should have had the opportunity to begin the therapy that the trial court originally prescribed for him.

The cases relied upon by Neckopulos are clearly distinguishable from the instant case. In both *Carter* and *Hamelin,* the defendants committed probation violations related to their drug addictions before having the opportunity to commence the drug treatment prescribed by the court. Neckopulos was not deprived of an opportunity to begin the treatment prescribed by the court. In fact, Neckopulos did begin the treatment. She admitted that, after several treatment sessions, she stopped attending treatment though not directed to do so by TASC. The lack of progress in her court-prescribed treatment was not caused by the unavailability of the treatment but rather by her own failure to take advantage of the opportunity presented. We find that the trial court's order revoking Neckopulos' probation did not deprive her of a meaningful opportunity to begin court-ordered treatment.

Neckopulos next contends that she was called as a witness in violation of the Criminal Jurisprudence Act. 725 ILCS 125/6 (West 1994).[1] She argues that the Act clearly prohibited her from being

---

[1]This provision was repealed and effective January 1, 1996, a new provision concerning witness competency was added to the Code of Criminal Procedure of 1963 (725 ILCS 5/115—16 (West Supp. 1995). The language relevant for our purposes remains identical in the newly enacted version.

called by the State in the absence of a request by her to be deemed a competent witness. As she made no such request, the State improperly called her as a witness at the hearing to revoke her probation.

The Act provides, in relevant part, that "a defendant in any criminal case or proceeding shall only at his or her own request be deemed a competent witness, and the person's neglect to testify shall not create any presumption against the person, nor shall the court permit any reference or comment to be made to or upon that neglect." 725 ILCS 125/6 (West 1994).

█ The issue facing us is one of statutory construction. The primary rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is best evidenced by the language of the statute. *People v. Fitzpatrick*, 158 Ill. 2d 360, 633 N.E.2d 685 (1994). "Where the statutory language is clear and unambiguous, it will be given effect without resorting to other aids for construction ***." *Fitzpatrick*, 158 Ill. 2d at 364-65, 633 N.E.2d at 687. We find the language of the present provision to be clear and unambiguous and confine our analysis to its language.

From the plain language of the provision, we conclude that it clearly prohibits the State from calling a defendant as a witness (absent a request on her part) at any criminal proceeding. However, a revocation proceeding "is not a criminal proceeding." *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7, 79 L. Ed. 2d 409, 425 n.7, 104 S. Ct. 1136, 1146 n.7 (1984), citing *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). Therefore, the Act, which by its own language applied only to criminal proceedings, did not bar the State from calling Neckopulos as a witness at the revocation hearing.

█ Neckopulos finally contends that her fifth amendment right against self-incrimination was violated when she was compelled to be a witness against herself despite her assertion of the privilege. We find this claim to be without merit.

The fifth amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The Supreme Court has broadly interpreted the fifth amendment prohibition against compelled testimony to permit a person not only to "refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Murphy*, 465 U.S. at 426, 79 L. Ed. 2d at 418, 104 S. Ct. at 1141, quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 281, 94 S. Ct. 316, 322 (1973).

In *Murphy*, the Supreme Court was faced with the issue of whether a probationer's incriminating responses to a probation officer's questions were admissible against him in a subsequent criminal proceeding. The Court concluded that if the questions posed to the probationer, even if relevant to his probationary status, required answers that would incriminate him in a pending or later criminal prosecution, then a fifth amendment right against self-incrimination would likely attach. *Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136. However, the Court also noted:

> "The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding. *** Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of [a probationary] requirement and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding." *Murphy*, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7.

In *People v. Martin*, 226 Ill. App. 3d 753, 589 N.E.2d 815, (1992), the State called a defendant to testify at a probation revocation hearing concerning a noncriminal violation of a condition of probation. Following the analysis in *Murphy*, the court in *Martin* concluded that "consistent with the fifth amendment to the United States Constitution, the State may call a defendant to testify at a probation revocation hearing to elicit testimony which would show that the defendant had violated conditions of his probation but which would not incriminate him in any other proceedings." 226 Ill. App. 3d at 759, 589 N.E.2d at 818. Accord *People v. Davis*, 216 Ill. App. 3d 884, 576 N.E.2d 510 (1991); *People v. Clark*, 268 Ill. App. 3d 810, 645 N.E.2d 590 (1995); *contra People v. Yantis*, 125 Ill. App. 3d 767, 466 N.E.2d 603 (1984).[2]

As the hearing on the petition to revoke Neckopulos' probation was not a criminal proceeding, the fifth amendment privilege to decline to take the stand accorded to criminal defendants at criminal proceedings was not available. Further, as the State's questions were relevant to Neckopulos' noncriminal probation violation and posed

---

[2]Neckopulos' reliance on *Yantis*, in support of her argument that the fifth amendment right to remain silent exists at probation revocation hearings, is unwarranted. The appellate court's decision in *Yantis* was contemporaneous with the Supreme Court's decision in *Murphy*. As *Yantis'* holding is inconsistent with the analysis in *Murphy,* we conclude that *Murphy* effectively overruled *Yantis*.

no realistic threat of incrimination in a future proceeding, the privilege to decline to answer particular questions was also unavailable to her. Therefore, Neckopulos' testimony was not elicited in violation of the fifth amendment.

For the above reasons, we affirm the decision of the circuit court.

Affirmed.

McCUSKEY, J., concurs.

JUSTICE LYTTON, specially concurring:

Although I agree with the majority's opinion in most respects, I specially concur in order to address a troubling procedural question. What happens when a defendant invokes the fifth amendment and simply refuses to testify at a probation revocation hearing?

The majority correctly holds that since a probation revocation hearing is civil, the fifth amendment right to remain silent does not apply in the same manner as in criminal cases. See *Murphy v. Minnesota*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984); *People v. Clark*, 268 Ill. App. 3d 810, 645 N.E.2d 590 (1995); *People v. Martin*, 226 Ill. App. 3d 753, 589 N.E.2d 815 (1992); *People v. Davis*, 216 Ill. App. 3d 884, 576 N.E.2d 510 (1991). This holding is correct as far as it goes, but it does not go far enough.

When the privilege against self-incrimination is raised in a civil context, the party claiming it is required to testify or suffer certain consequences by remaining silent. If the party refuses to testify, the court can draw negative inferences against the party. The fact finder does not violate the fifth amendment by "draw[ing] whatever inference from [a party's] silence that the circumstances warrant[ ]." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 821, 96 S. Ct. 1551, 1558 (1976) (a prison disciplinary board could properly give a prisoner's silence the "evidentiary value [that] was warranted by the facts surrounding his case").

In *Murphy*, the Supreme Court extended the *Baxter* rule to probation revocation hearings. The court found that probation revocation hearings were civil in nature, and, unless a statement would incriminate the defendant in another criminal proceeding, the defendant could be required to communicate with his probation officer. The court stated:

> "[N]othing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation *or from using the probationer's silence as 'one of a number of factors to be considered by the finder*

*of fact' in deciding whether other conditions of probation have been violated."* (Emphasis added.) *Murphy*, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7, quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n.5, 53 L. Ed. 2d 1, 9 n.5, 97 S. Ct. 2132, 2137 n.5 (1977).

This situation can be likened to criminal cases prior to *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965), when prosecutors could ask fact finders to draw inferences against defendants because of their failure to testify. Similarly, today in probation revocation hearings, prosecutors can ask trial judges to draw inferences against probationers if they do not testify.

In his treatise on criminal procedure, Professor LaFave describes the rule as follows: "the defendant may be required to testify regarding his noncriminal conduct even if it amounts to a probation violation *or else have his refusal considered against him.*" (Emphasis added.) 3 W. LaFave & J. Israel, Criminal Procedure § 25.4, at 164 (1984).[3]

Many jurisdictions have adopted this rule in probation revocation hearings. See *United States v. Robinson*, 893 F.2d 1244 (11th Cir. 1990) (trial court may infer a violation of a condition of probation from defendant's silence); *Calvert v. State*, 310 N.W.2d 185 (Iowa 1981) (same); *State v. Mangan*, 343 So. 2d 599 (Fla. 1977) (same); *Cassamassima v. State*, 657 So. 2d 906 (Fla. App. 1995) (probation revoked after refusal to answer); *States v. Ferguson*, 72 Ohio App. 3d 714, 595 N.E.2d 1011 (1991) (trial court may infer a violation of a condition of probation from defendant's silence); *Watson v. State*, 388 So. 2d 15 (Fla. App. 1980) (same).[4]

---

[3]The question of whether the inference may be conclusive evidence of a violation of probation is an open one. One view holds that if "any" inference can be drawn, it might be sufficient to revoke. See *Cassamassima v. State*, 657 So. 2d 906 (Fla. App. 1995). However, the Supreme Court in *Murphy* suggested that a probationer's reliance on the fifth amendment was one of several factors to be considered. *Murphy v. Minnesota*, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7.

[4]In other diverse types of civil cases, courts have agreed that adverse inferences may be drawn from a party's refusal to testify. See *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924 (7th Cir. 1983) (analyzing the application of the fifth amendment in civil cases). See also *Pagel, Inc. v. Securities Exchange Comm'n*, 803 F.2d 942 (8th Cir. 1986) (SEC broker/dealer registration); *State Department of Law & Public Safety, Division of Gaming Enforcement v. Merlino*, 216 N.J. Super. 599, 524 A.2d 821 (1987), *aff'd*, 109 N.J. 134, 535 A.2d 968 (1988) (casino gambling license); *Whitaker v. Prince Georges County*, 307 Md. 368, 514 A.2d 4 (1986) (injunction against operation of house of prostitution).

A significant distinction exists between drawing inferences from a probationer's silence and actually ordering the person to testify. The result for a probationer may indeed be the same, depending on the inferences taken in any particular case, but the distinction should not be ignored. The Illinois cases cited by the majority point favorably to Professor LaFave, but none address the situation presented in this case, where the trial judge ordered the defendant to testify.

Finally, when a prosecutor attempts to prove a violation of probation, the clear preference must always be to call the State's own witnesses, such as probation officers or TASC employees. While a trial court may compel testimony through its contempt powers, reliance on the defendant's testimony alone should not be encouraged and could easily backfire. As the trial judge in this case said:

> "And if her brains are fried on the drugs, *maybe we ought to get her off the witness stand and get somebody from TASC in here and tell what she was directed to do [and] what she didn't do.* Or we can go around and around the post with people who have got fried brains and [not] expect anything rational out of them." (Emphasis added.)