NO. 4-97-0170

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Appeal from

Plaintiff-Appellee,           )   Circuit Court of

v.                            )   Vermilion County

THEREON B. BELL, JR.,                   )   No. 92CF384

Defendant-Appellant.          )

                                        )   Honorable

                                        )   Thomas J. Fahey,

                                        )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

On November 8, 1993, defendant, Thereon Bell, pleaded guilty to burglary.  Ill. Rev. Stat. 1991, ch. 38, par. 19-1.  On December 28, 1993, the trial court sentenced defendant to 30 months' probation, 50 hours of community service, a $25 monthly pro­ba­tion ser­vice fee when he was employed, $173 in court costs and $100 pub­lic defender's fee.  

A petition to revoke defendant's probation was filed on June 18, 1996, alleging defendant failed to pay court costs, pro­bation service fees and the public defender's fee.  A hearing was held on the petition to revoke probation on December 6, 1996.  Over defendant's objection, the State called defendant as its only witness.  Defendant testified he knew he had been ordered to pay costs, probation fees, and a public defender fee but had not done so.  The trial court found defendant had violated the terms of his probation and revoked it.  

On February 14, 1997, defendant was sentenced to anoth­er 30-month term of probation, including 50 days in jail and 50 hours of community service.  He was ordered to pay a $10 monthly pro­ba­tion fee in addi­tion to the $25 monthly fee owed from the orig­i­nal term of proba­tion, costs of $173 and a public defender's fee of $100.  Defendant appeals, claiming forcing him to testi­fy at the probation revocation hearing violated his fifth amend­ment privilege against self-incrimination and violated his due process rights to a fundamentally fair hearing; and the trial court erred in assessing a public defender's fee without holding a hearing to determine his ability to pay the fee.  We find no vio­la­tion of defendant's fifth amend­ment and due pro­cess rights but vacate the recoupment order and re­mand for the pur­pose of hold­ing a hear­ing to de­ter­mine defendant's abil­ity to pay the as­sessed public de­fender fees.

There are no factual or credibility issues in this case.  It is appropriate to conduct 
de
 
novo
 review.  
Peo­ple v. Dilworth
, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 314 (1996).       Defendant acknowledges this court has held calling a defendant as a witness at a probation revocation hearing does not violate the fifth amendment to the United States Constitution providing the testimony elicited would not incriminate the de­fendant in any other proceeding.  
Peo­ple v. Mar­tin
, 226 Ill. App. 3d 753, 759, 589 N.E.2d 815, 818 (1992).  De­fendant re­quests this court to re­consider its ruling and grant him a new revoca­tion hearing.  

A proba­tion revo­cation pro­ceed­ing is noncrim­inal.  
Peo­ple v. Neckopulos
, 284 Ill. App. 3d 660, 665, 672 N.E.2d 757, 761, (1996), citing 
Min­ne­so­ta v. Murphy
, 465 U.S. 420, 435-36 n.7, 79 L. Ed. 2d 409, 425 n.7, 104 S. Ct. 1136, 1146-47 n.7 (1984), cit­ing 
Gagnon
 v. Scarpelli
, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973).  Sec­tion 115-16 of the Code of Crimi­nal Pro­ce­dure of 1963 (Code) bars the State from calling a defen­dant as a wit­ness ab­sent a request on the part of the defendant (725 ILCS 5/115-16 (West 1996)).  However, there is no bar­ri­er against a party to a civil ac­tion being called to testify on behalf of the other par­ty.  De­fen­dant ar­gues a pro­ba­tion revo­ca­tion re­sults in sig­nif­i­cant de­pri­va­tion of liber­ty and, there­fore, a proba­tioner should not be de­prived of the protections provided by the fifth amend­ment priv­i­lege against self-incrimina­tion simply be­cause a proba­tion revo­cation is noncrimi­nal.    

A probation revocation proceeding has not been arbi­trarily labeled a noncriminal proceeding.  A sentence of pro­ba­tion is a form of agreement between a defendant and the crim­inal justice system with severe consequences if the agreement is bro­ken.  
People v. Brown
, 137 Ill. App. 3d 453, 455, 484 N.E.2d 945, 946 (1985).  De­fen­dant ar­gues pro­ba­tion revo­ca­tion pro­ceed­ings share many char­ac­teris­tics with a criminal trial such as written charg­es, the right to be heard, the right to confront and cross-exam­ine wit­nesses and a burden of proof placed on the State.  In fact the burden of proof required of the State in proving a vio­la­tion of probation is only prepon­derance of the evidence.  730 ILCS 5/5-6-4(c) (West 1996).  All of these char­acter­istics, taken togeth­er, are no dif­fer­ent from those found in civil pro­ceed­ings.  See 
City of Chicago v. Shell Oil Co.
, 29 Ill. 2d 136, 140, 193 N.E.2d 759, 761 (1963); 
Diamond Mort­gage Corp. v. Armstrong
, 176 Ill. App. 3d 64, 69, 530 N.E.2d 1041, 1044 (1988); 
Lakeview Trust & Savings Bank v. Estrada
, 134 Ill. App. 3d 792, 808, 480 N.E.2d 1312, 1324 (1985).

A defendant in a noncriminal pro­ceed­ing has no priv­ilege against self-incrimination.  Defen­dant presents no per­sua­sive reason to hold a probation revocation hear­ing is not a civil proceeding and to over­rule our deci­sion in 
Martin
.

Defendant disputes the correctness of our deci­sion in 
Martin
, but also contends this case does not come with­in the hold­ing of 
Martin
.  Defendant argues forcing him to testify he failed to pay the as­sessed pub­lic defender fee forced him to incriminate him­self for contempt of court and thus, his testimony would in­crimi­nate him in another proceeding, a situa­tion that we held in 
Martin
 would be violative of a defendant's fifth amend­ment right.  
Mar­tin
, 226 Ill. App. 3d at 759, 589 N.E.2d at 818.  The precise language used by the court in 
Mar­tin
 was:

"[W]e hold that consistent with the fifth 

amendment to the United States Constitution,

the State may call a defendant to testify 

at a probation revocation hearing to elicit

testimony which would show that the defen-

dant had violated conditions of his proba-

tion but which would not incriminate him in 

any
 
other
 
proceedings
."  (Emphasis added.) 

Martin
, 226 Ill. App. 3d at 759, 589 N.E.2d 

at 818. 

Defendant ar­gues for a gen­er­ous defi­ni­tion of the term "any" 
to modi­fy "other pro­ceed­ings."  He notes a defendant who fails to obey an order of the court to reimburse the county for ap­pointed coun­sel "may be punished for contempt of court."  725 ILCS 5/113-3.1(g) (West 1996).  As this statute specifically states it is intended to punish the defen­dant who fails to pay the as­sessed pub­lic defender fees, defendant contends it refers to crim­i­nal con­tempt and not civil con­tempt.  See 
Marcisz v. Marcisz
, 65 Ill. 2d 206, 209, 357 N.E.2d 477, 479 (1976), quot­ing 
People ex rel. Chicago Bar Ass'n v. Barasch
, 21 Ill. 2d 407, 409-10, 173 N.E.2d 417, 418-19 (1961).  The non­pay­ment of the fee would constitute an indirect contempt, which is de­fined as con­tempt "in which the whole or an essential part of the contemptu­ous acts occur out of the presence of the court."  
People v. Javaras
, 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672 (1972).  

An indirect contempt proceeding is initiated by inform­ing the alleged contemnor of the charges against him by informa­tion, notice citation, or rule to show cause.  
Javaras
, 51 Ill. 2d at 300, 281 N.E.2d at 672.  A probationer cannot be held in con­tempt when the only charging instrument filed is a petition to revoke probation.  See 
People v. Boucher
, 179 Ill. App. 3d 832, 835-836, 535 N.E.2d 56, 58-59 (1989).  Thus, defendant argues a later con­tempt proceeding must be a proceeding separate from the revo­ca­tion.    

Contempt proceedings, however, while called either civil or criminal, are actually neither.  
Chicago Bar Ass'n
, 21 Ill. 2d at 409, 173 N.E.2d at 418.  "Proceedings in the nature of criminal contempt have been defined as those directed to pres­ervation of the dignity and authority of the court ***."  
Chicago Bar Ass'n
, 21 Ill. 2d at 409, 173 N.E.2d at 418.  The in­tent of the court in 
Martin
 was not that "other proceed­ings" refer to a con­tempt pro­ceed­ing enforcing a trial court's au­thor­i­ty in the case before it but
 that it refer to other crim­inal charg­es.  The 
Martin
 court dis­cus­sed 
Mur­phy
, where the Supreme Court held if questions put to a proba­tion­er, rele­vant to his probationary status, also call for an­swers that would incrim­inate him in a 
pending or later criminal prosecution
, a fifth amend­ment right against self-in­crimination would attach.  
Martin
, 226 Ill. App. 3d at 757, 589 N.E.2d at 817.  See 
Murphy
, 465 U.S. at 435, 79 L. Ed. 2d at 424-25, 104 S. Ct. at 1146.

We believe the language in 
Martin
, "any other pro­ceed­ings," ap­plies to other contemporaneous or later crim­inal pro­ceed­ings and not contempt proceedings.  We also believe there is no violation of defendant's fifth amendment right in this case be­cause there is no 
realistic
 threat the defendant's answers will be used against him in a later indirect contempt proceeding.  We are aware of no case where a defendant has been subject to a probation revocation proceeding and a later indirect criminal contempt.  In the unlikely event a prosecutor attempted to do so, we might well consider the fifth amendment challenge in a differ­ent light.

To avoid such concerns, the better practice would seem to be for the State to call its own witnesses rather than at­tempting to prove a violation of probation by calling only the defendant.  If it is necessary to call the defendant, the State might offer the probationer immunity for any contempt arising out of his admission of a nonpayment of fees and costs.        

Defendant argues next even if he did not have a fifth amendment privilege against self-incrimination in the pro­bation revocation proceedings, forcing him to admit he violat­ed the terms of his probation is violative of his right to a funda­men­tally fair probation hearing as guaranteed by the due process clauses of the state and federal constitutions.  U.S. Const., amend. V; Ill. Const. 1970, art. I, §2.  Due process con­sid­er­ations require a formal admission to a pro­ba­tion vio­la­tion.  Waiving the right to a judi­cial de­ter­mi­na­tion of the vio­la­tion must be volun­tary.  
Peo­ple v. Pier
, 51 Ill. 2d 96, 100, 281 N.E.2d 289, 291 (1972).  Defendant ar­gues an invol­un­tary admis­sion in a pro­bation viola­tion hearing should also be prohib­ited on due process grounds.  He contends the view due pro­cess guaran­tees a right against self-incrimina­tion at a proba­tion violation hearing has been accepted in 
People v. Steele
, 283 Ill. App. 3d 413, 670 N.E.2d 757 (1996).  There are factual dis­tinc­tions be­tween 
Steele
 and this case, however.

In 
Steele
, a petition for violation of probation was filed against the defendant alleging he never reported to his probation officer.  At the hearing on the petition, a different probation officer than the one assigned to the defendant testi­fied from a document prepared by the defendant's probation offi­cer the defendant failed to report for four consecutive months.  The trial court then directly asked the defendant if he failed to re­port to the probation department during the months indicated.  Defense coun­sel stated the defendant would not respond and would assert his fifth amendment privilege.  The trial court told the defendant his response would not subject him to future criminal liability and found the defendant's refusal to answer to be an admission.  Probation was revoked and the defendant was sentenced to one year in jail.  
Steele
, 283 Ill. App. 3d at 414-15, 670 N.E.2d at 758-59.

On appeal, the trial court was reversed on the grounds it abdicated its responsibility as the trier of fact and aban­doned fundamental fairness principles.  
Steele
, 283 Ill. App. 3d at 415, 670 N.E.2d at 759.  The determina­tion of a vio­la­tion of proba­tion must be based on the evidence pre­sented and the trial court cannot help the State with its burden of proof by asking a defendant to dis­regard his constitu­tional rights and incriminate himself, compel­ling him to admit the ulti­mate factual question of the case.  The defen­dant's right to a fundamentally fair hearing was denied.  
Steele
, 283 Ill. App. 3d at 415-16, 670 N.E.2d at 759.

In this case, the trial court did not attempt to ques­tion defendant.  The State called defendant as an ad­verse wit­ness and questioned him on whether he had paid the as­sessments re­quired under the terms of his probation.  The trial court did not involve itself in question­ing de­fen­dant but re­mained solely the trier of fact.  This preserved the fundamental fairness of the pro­bation violation hearing.

Due process is flexible and calls for the procedur­al protections a particular situation demands.  
Morrissey v. Brew­er
, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600    (1972); 
Abrahamson v. Illinois Department of Professional Regula­tion
, 153 Ill. 2d 76, 92, 606 N.E.2d 1111, 1119 (1992).  Due pro­cess requires fewer procedural safeguards in a probation revoca­tion hear­ing.  
Peo­ple v. DeWitt
, 78 Ill. 2d 82, 85, 397 N.E.2d 1385, 1386 (1979).  A pro­bationer has already been convicted of a crime resulting in pro­bation and, therefore, is entitled to fewer pro­cedural safe­guards than one who has not been convicted at all.  
Gagnon
, 411 U.S. at 789, 36 L. Ed. 2d at 665-66, 93 S. Ct. at 1763.  

Gagnon
 held due process requires 
a pro­ba­tion­er be given writ­ten notice of the alleged violation, disclosure of the evi­dence against him, the opportuni­ty to be heard in per­son and to present testimonial and documen­tary evi­dence, confron­tation and cross-examination of adverse witnesses, judgment by a neutral and de­tached hearing body, re­ceipt of a written statement by the fact finder stating the evi­dence relied on and the reason for the finding and, depending on the circum­stances, assistance of coun­sel.  
Gagnon
, 411 U.S. at 782, 786, 788, 36 L. Ed. 2d at 662, 664, 665, 93 S. Ct. at 1760, 1761-62, 1763.  By stat­ute Illinois re­quires no­tice to the probationer of a pe­ti­tion charging a vio­la­tion of proba­tion; a court hearing on the al­leged vio­la­tion; the right to be heard and confront and cross-examine witnesses; the right to representation by counsel in all circum­stances; and the State has the burden to go forward with evidence and prove the violation by a preponderance of the evi­dence.  730 ILCS 5/5-6-4(a) through (c) (West 1996).  

There is no ques­tion de­fen­dant re­ceived no­tice of the violations against him, was repre­sented by counsel, had a hearing in open court, could have pre­sented wit­nesses in his own behalf and his counsel cross-exam­ined him as the State's witness.  De­fendant was af­forded due pro­cess in his probation vio­lation hear­ing.

Defendant also contends his due process rights to be heard, confront and cross-examine witnesses, and receive assis­tance of counsel were interfered with by compelling him to testi­fy.  Further, he contends the State was relieved of its burden of proof by his testimony.  

Defendant contends the corollary to the right to be heard is the right to remain silent.  As was noted earlier, how­ev­er, a probation violation hearing is a noncriminal proceeding and, in a civil con­text, a party is re­quired to tes­ti­fy or suf­fer the con­sequenc­es.  In a civil pro­ceeding, if a party re­fus­es to tes­ti­fy, the court can draw nega­tive in­fer­ences against the par­ty.  See 
Baxter v. Palmigiano
, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 821, 96 S. Ct. 1551, 1558 (1976).  These inferenc­es apply specifi­cally to a probation revo­ca­tion hear­ing.    

"[N]othing in the Federal Constitution would

prevent a State from revoking probation for

a refusal to answer that violated an express

condition of probation or from using the 

probationer's silence as 'one of a number 

of factors to be considered by the finder 

of fact' in deciding whether other conditions

of probation have been violated."

Murphy
, 465 U.S. at 435 n.7, 79 L. Ed. 

2d at 425 n.7, 104 S. Ct. at 1146 n.7, 

quot­ing 
L
efkowitz v. Cunningham
, 431 U.S. 

801, 808 n.5, 53 L. Ed. 2d 1, 9 n.5, 97 

S. Ct. 2132, 2137 n.5 (1977).

A refusal to testify on the part of the probationer would be considered an admission he violated his probation.  
Cf.
 3 W. LaFave & J. Israel, Criminal Proce­dure §25.4(c), at 166 (1984) (probationer has the dilemma of testifying and risking revocation, or not testifying and risking revocation anyway due to the State's low burden of proof).  The right to re­main si­lent in a pro­ba­tion vio­la­tion hear­ing is tem­pered by the infer­ence that can be drawn from the si­lence.  De­fendant contends this in­ter­feres with his right to counsel as the most important advice counsel can give is whether to tes­tify.  Counsel's advice would be useless if refusal to testify would result in legal harm.  

Counsel has other assistance to render.  Coun­sel can examine witnesses on behalf of a defendant and can cross-examine the State's witnesses.  Neither role was denied counsel or defen­dant here.  The State's burden of proof was not eliminat­ed by requiring defendant to testify.  Depending on the actual con­tent of defendant's testimony, the State may have needed more evi­dence to prove the probation viola­tions.  In that case, de­fense coun­sel would have had more to do.  In this case de­fen­dant ad­mit­ted to the probation viola­tions and provided no reason he was un­able to com­ply with the terms of proba­tion.  Compel­ling defen­dant to testify as a witness for the State did not deprive him of any due process safe­guards due him in a pro­ba­tion viola­tion hear­ing.

Defendant's final argument is the trial court erred in assessing a public defender reimbursement fee without holding a hearing to determine defendant's ability to pay the fee.  Sec­tion 113-3.1 of the Code allows a trial court to order a de­fen­dant to pay a reasonable sum to reimburse the county for rep­re­senta­tion by court-appointed coun­sel.  725 ILCS 5/113-3.1(a)(West 1996).  To determine the appro­priate amount to be paid, a hear­ing into the defendant's finan­cial cir­cumstanc­es is re­quired to be held prior to ordering reim­burse­ment.  725 ILCS 5/113-3.1(a)(West 1996).  

Recently, the supreme court was asked to determine whether the hearing reference in section 113-3.1(a) merely al­lowed a trial court to hold such a hearing or required it do so.  The court held section 113-3.1 
requires
 a trial court to "conduct a hearing into a defendant's financial circumstances and find an ability to pay before it may order the defendant to pay reim­bursement for appointed counsel."  
People v. Love
, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997).  At the required hear­ing, the focus must be on the foreseeable ability of the defen­dant to pay reimbursement as well as the costs of the representa­tion provid­ed.  
Love
, 177 Ill. 2d at 563, 687 N.E.2d at 38.  No hear­ing was held in this case.

The State argues defendant has waived this issue.  The State contends the original order of probation included ass­ess­ment of a $100 public defender fee.  Defendant did not ap­peal his original guilty plea and sentence and, therefore, the State con­tends, the issue of the pub­lic defender fee is not before this court in this appeal.  See 
People v. Jolliff
, 183 Ill. App. 3d 962, 967, 539 N.E.2d 913, 916 (1989).  

Section 5-6-4 of the Unified Code of Corrections pro­vides if a trial court finds a violation of probation, the exist­ing sentence may be continued, with or without modifications, or a new sentence may be imposed.  730 ILCS 5/5-6-4(e) (West 1996).   After the trial court found a violation of proba­tion on De­cem­ber 6, 1996, and revoked probation, a sentencing hearing was held on February 14, 1997.  At the sentencing hearing the State recom­mended a term of incarceration while defendant asked to be read­mitted to probation.  The trial judge ordered defendant be placed on 30 months' probation with no credit for time already served.  He ordered defendant to do 50 hours' additional public service work and serve 50 days in jail.  Defendant was also ordered to pay 20% of his sala­ry in child sup­port, pro­ba­tion fees in the amount of $10 per month, past-due probation fees, court costs of $173, and a $100 public defender fee.

This was a new sentence of probation and new monetary assessments were made.  The trial court did not say defendant would be paying $100 previously due in public defender fees; it as­sessed a new fee of $100.  Supreme Court Rule 604(b) provides for the appeal from a modification or revocation of pro­ba­tion.  145 Ill. 2d R. 604(b).  On appeal from the revocation of proba­tion, issues that may be raised must concern the propriety of the revo­cation and the sentence imposed.  
People v. Combs
, 197 Ill. App. 3d 758, 761, 555 N.E.2d 66, 67 (1990).  The imposi­tion of a public defender fee as a condition of defendant's sen­tence of proba­tion is appealable.

Finally, the State contends because defendant did not ob­ject to the lack of a hear­ing in the trial court, he has waived any error in the imposition of the reimbursement order.  However,  we find, as did the court in 
Love
, there was plain error in the failure to hold a hearing.  
Love
, 177 Ill. 2d at 564, 687 N.E.2d at 39.  The trial court in this case, as did the court in 
Love
, im­posed a reim­bursement order in a perfunctory manner as if it were a mat­ter of course in every case.  The trial court did not consid­er defendant's cur­rent fi­nan­cial circum­stanc­es or allow defendant an opportunity to pres­ent evidence or other­wise con­test the imposition of a reimburse­ment order.  While evidence was presented during the hearing on the violations of probation that defendant was em­ployed during his first term of probation, no evidence was pre­sented concerning his fi­nancial cir­cum­stanc­es at the time of the sentencing hearing.  In fact, there were indi­ca­tions he may no longer have a job be­cause of in­car­cer­ation.  Fur­ther, the trial court im­posed addi­tion­al proba­tion fees and re­quired 20% of defendant's income be ap­plied to child sup­port, expenses defen­dant did not have under the orig­inal sen­tence of probation.  The trial court's failure to follow the procedures required by section 113-3.1 requires us to vacate the reim­burse­ment or­der, despite defendant's failure to object.

We affirm the judgment of the trial court re­vok­ing defendant's probation but vacate the reim­bursement order and remand for a hearing pursuant to section 113-3.1.

Affirmed in part, vacated in part, and remanded.   GARMAN, P.J., and STEIGMANN, J., concur.