THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRINI WILSON, Defendant-Appellant.

Fourth District    No. 4—97—0083

Argued September 24, 1997.—Opinion filed December 8, 1997.

340

Brett N. Olmstead (argued), of Beckett & Webber, P.C., of Urbana, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

On July 26, 1994, defendant Trini Wilson pled guilty to the offense of driving under the influence of alcohol and was sentenced to probation for 18 months. The probation order required that he (1) serve 120 days in jail (with credit for 14 days served); (2) complete 75 hours of outpatient alcohol/drug treatment and aftercare; and (3) attend three Alcoholics Anonymous (AA) meetings per week for 30 weeks. The probation order also stated that defendant was to serve 20 days of the jail time immediately and to attend a remissions hearing beginning in November 1994. Although it is unclear from the probation order, it appears the purpose of the remission hearings was to supervise defendant's compliance with the AA and drug treatment conditions, with the possibility that some or all of the 120 days' jail time would be forgiven if he complied.

From the beginning, defendant failed to comply with the probation conditions. At the first remission hearing, on November 18, 1994, defendant presented proof that he had attended only nine AA meetings and the court ordered him to serve two more days of the 120-day sentence. The defendant failed to appear at the next scheduled remission hearing, so the second remission hearing was not held until May 16, 1995. There the court discovered defendant had been discharged from substance-abuse treatment against staff advice "due to lack of participation in treatment" and ordered him to serve an additional 14 days.

At the third remission hearing, on June 28, 1995, and the fourth

remission hearing, on July 14, 1995, defendant showed compliance with the AA and drug treatment conditions and was not incarcerated. However, on August 23, 1995, defendant was found to have committed the offense of driving on a revoked license. He failed to appear at the next remission hearing. The fifth remission hearing was finally held on February 21, 1996. Defendant produced no documentation and was ordered to serve the rest of his 120-day jail sentence. Eight days after the hearing, on February 29, 1996, defendant's probation period expired.

On April 15, 1996, 45 days after defendant's probation expired, the State filed a petition for rule to show cause why the defendant should not be held in indirect civil contempt. On September 3, 1996, the trial court found defendant in indirect civil contempt for willfully failing to comply with the AA and drug treatment orders. The contempt order required defendant to attend the previously ordered AA meetings and treatment by October 28, 1996, or he would be remanded to jail until he purged his contempt. The court later clarified the order, at defendant's request, by another order of January 24, 1997, stating that the literal language of the order did not reflect the practice of the court. The court clarified that if defendant was jailed for not purging his contempt, he would be afforded a hearing within 21 days to demonstrate his willingness to comply with the court's order if released. On January 16, 1997, defendant was discharged from probation. Defendant filed a notice of appeal on January 29, 1997, and was granted a stay pending appeal on February 20, 1997.

Defendant argues the trial court lacked subject-matter jurisdiction to find him in civil contempt because his probation period had expired. Additionally, defendant argues that even if the court had jurisdiction, the particular order of civil contempt was not coercive in nature. The order was punitive because it potentially imprisoned defendant for periods of time in which he could not obtain immediate release by compliance with the probation order.

■ It is generally said that a court's jurisdiction ends with the probation expiration date. *People v. Mowery*, 116 Ill. App. 3d 695, 704, 452 N.E.2d 363, 370 (1983); *People v. Johnson*, 265 Ill. App. 3d 509, 511, 637 N.E.2d 700, 701 (1994). Once the probation period ends, the defendant may stop looking over his shoulder and is assured that the State will not seek the stronger sentence the court originally could have imposed. At that point, probation is terminated and there is nothing left to revoke or modify. *People v. Randolph*, 98 Ill. App. 3d 696, 699, 424 N.E.2d 893, 895 (1981).

However, this general rule only applies to revocation or modifica-

tion of probation. In some instances, a court may retain subject-matter jurisdiction to enforce unfulfilled conditions of probation after the probation period has expired. See *People v. Brown*, 142 Ill. App. 3d 712, 713, 492 N.E.2d 238, 239 (1986); *People v. Draves*, 149 Ill. App. 3d 657, 659, 500 N.E.2d 1072, 1073 (1986); *People v. Bertalot*, 164 Ill. App. 3d 89, 93, 518 N.E.2d 467, 470 (1987); *Mowery*, 116 Ill. App. 3d at 707, 452 N.E.2d at 372 (Miller, J., concurring in part and dissenting in part). Trial courts may use their contempt power after the probation period to enforce conditions of probation that can survive "independently" of the probation order. *Draves*, 149 Ill. App. 3d at 659, 500 N.E.2d at 1073; *Bertalot*, 164 Ill. App. 3d at 92-93, 518 N.E.2d at 470; *Mowery*, 116 Ill. App. 3d at 707, 452 N.E.2d at 372 (Miller, J., concurring in part and dissenting in part). ·

In *Mowery*, the trial court found defendant in contempt for neglecting to pay court costs and restitution as part of his sentence of probation. *Mowery*, 116 Ill. App. 3d at 697, 452 N.E.2d at 365. Justice Miller stated:

> "The expiration of probation should have no effect here, for the contempt is a separate proceeding ***. I would also construe the fine and restitution ordered here *** as *independent dispositions* that survive the expiration of the period of probation." (Emphasis added.) *Mowery*, 116 Ill. App. 3d at 707, 452 N.E.2d at 372 (Miller, J., concurring in part and dissenting in part).

Subsequent cases have adopted Justice Miller's position. *Draves*, 149 Ill. App. 3d at 659, 500 N.E.2d at 1073; *Bertalot*, 164 Ill. App. 3d at 92, 518 N.E.2d at 470.

In *Bertalot*, the court held that monetary conditions, such as fines and restitution, survived probation because they were "independent dispositions." *Bertalot*, 164 Ill. App. 3d at 92-93, 518 N.E.2d at 470. In determining whether a probation condition was an "independent disposition," the court looked to section 5—5—3(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5—5—3(b) (West 1996)). Section 5—5—3(b) lists eight punishment options that are appropriate dispositions in criminal cases. 730 ILCS 5/5—5—3(b) (West 1996). *Bertalot* held that because fines and restitution were available on this list as sentencing alternatives, they were dispositions that could stand alone independent of a probation order. *Bertalot*, 164 Ill. App. 3d at 92-93, 518 N.E.2d at 470. Conversely, because public service work was not available as a sentencing option under section 5—5—3(b), but available only as a probation condition under section 5—6—3(b), it was not an independent disposition. *Bertalot*, 164 Ill. App. 3d at 93, 518 N.E.2d at 470. *Bertalot* went on to state in *dicta* that *only* monetary conditions survived because the statutory contempt provi-

sion of section 5—9—3 of the Code (730 ILCS 5/5—9—3 (West 1996)) expressly provides that fines can be enforced through contempt but makes no mention of nonmonetary conditions. *Bertalot*, 164 Ill. App. 3d at 93-94, 518 N.E.2d at 470-71.

■ We agree with *Bertalot* to the extent that to survive the period of probation as an independent disposition, the punishment must exist as a sentencing alternative under section 5—5—3(b) of the Code. Forms of punishment that can only be imposed in conjunction with probation orders cannot survive once that probation order has expired. Defendant's AA and drug treatment conditions here are not sentencing alternatives under section 5—5—3(b). They are only available in conjunction with a probation order pursuant to section 5—6—3(b). 730 ILCS 5/5—6—3(b) (West 1996). Therefore, when defendant's probation period expired, the trial court lacked subject-matter jurisdiction to enforce those conditions. The order of contempt must be reversed.

We disagree with *Bertalot*, however, that only monetary conditions can survive probation. We believe that certain nonmonetary punishments, such as a specific jail term, may be enforced after probation, if they are "independent conditions" under section 5—5—3(b). See *Brown*, 142 Ill. App. 3d 712, 492 N.E.2d 238. Section 5—9—3(b) authorizes the use of contempt to enforce the payment of a fine but does not rule out the possibility that contempt may be used to enforce other conditions of probation after the period expires. 730 ILCS 5/5—9—3(b) (West 1996). The purpose of section 5—9—3 is to limit how long a court may imprison someone in an attempt to coerce him or her to pay a fine. The section did not address the use of contempt to enforce nonmonetary conditions because it was not necessary. When a court forces a probationer to fulfill a specific jail term, use of the contempt power is unnecessary. The court simply puts the defendant in jail for the specified term. Any of the independent dispositions set out in section 5—5—3(b) may be enforced after the expiration of the probation period, whether monetary or nonmonetary.

We reverse (1) because the court was attempting to enforce conditions of probation after the expiration of the period of probation, and those conditions were not independent of probation. Our reversal of the trial court is also based (2) on the ambiguity of the particular probation order. The probation order does not state whether the AA and drug treatment conditions were intended to survive the probationary period. One possible view is that these conditions were intended as alternatives to the 120 days' jail time and now are foreclosed from enforcement because defendant has already served the 120 days. This uncertainty breaches the rule that "a defendant is

entitled to know precisely what his sentence is [citation], and those charged with execution of the sentence must be able to ascertain its meaning." *Brown,* 142 Ill. App. 3d at 714, 492 N.E.2d at 240 (Harrison, J., dissenting). However, we would also reverse the trial court on point (1) even if the ambiguity of the probation order were not present.

For the reasons above stated, we reverse the judgment of the circuit court of Champaign County.

Reversed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.