NO. 4-08-0930          Filed 10/22/09

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | DeWitt County |
| ARTHUR J. COVINGTON, | ) | No. 04DT42 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Chris E. Freese, |
| | ) | Judge Presiding. |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

In August 2008, the State petitioned the trial court to adjudicate defendant, Arthur J. Covington, in indirect criminal contempt of court for failing to comply with the court's August 1, 2008, order requiring him to find full-time employment by August 25, 2008. In November 2008, the court found defendant in indirect criminal contempt of court, sentenced him to six months in jail, and ordered him to pay $796.50 in jail-meal fees.

Defendant appeals, arguing (1) the trial court lacked subject-matter jurisdiction to find he violated a condition of the original December 2005 supervision order, (2) the court's use of improper contempt procedures violated his due-process rights, and (3) if this court remands the case, it should be remanded to a different judge. We vacate the trial court's order finding defendant in indirect criminal contempt and remand for further proceedings not inconsistent with this opinion.

## I. BACKGROUND

In June 2004, the State charged defendant by citation with two counts of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2004)).

In November 2005, defendant pleaded guilty to count I of DUI.  On the State's motion, the trial court dismissed count II.

In December 2005, the trial court sentenced defendant as follows:

> "I am placing you on supervision for a period of 24 months.  You are to report twice a month to the probation office, pay a $25.00[-]per[-]month supervision fee, fined $1,000.00, pay the $100.00 DUI equipment fee, refrain from using or possessing alcohol, cannabis, or controlled substances, undergo random testing, not enter any establishment that has as its primary source of income the sale of alcohol, obtain an alcohol and drug evaluation within 30 days of today's date, complete any recommended treatment within six months, attend VIP, obey the statutory terms and conditions of supervision."

The April 11, 2007, docket entry shows "FINE AND COSTS

- 2 -

PAID IN FULL [AS OF] THIS DATE."

In June 2007, the State filed a petition to revoke defendant's supervision, alleging defendant violated supervision by testing positive for cannabis on May 21, 2007, admitting smoking cannabis on May 17, 2007, and failing to complete the DUI evaluation within the first 30 days and the recommended 10-hour DUI risk education classes within the first 6 months.

In August 2007, the State filed an amended petition to revoke defendant's supervision, alleging defendant again tested positive for cannabis on August 15, 2007.

In October 2007, the trial court held a hearing on the State's petition and revoked defendant's supervision.

In November 2007, the trial court entered a written order unsuccessfully discharging defendant's supervision, entered a judgment of conviction, and sentenced defendant to 90 days in jail. The court also ordered defendant to pay $398.25 in jail-meal fees.

In March 2008, the trial court called the case for hearing on defendant's ability to pay the jail-meal fees. No transcript of the proceeding is included in the record. However the March 14, 2008, docket entry shows the following:

"[The People] appear by SA Jerry Johnson.

[Defendant] appears pro se. Cause called for

[hearing] on ability to pay. [Defendant]

states he is unemployed and on [motion] of
[the People] cause reset for further review
to April 25, 2008, at 10 a.m. [Defendant]
ordered to return said date with 20
completed/submitted job [applications]."

The parties agree the court ordered defendant to appear on April 25, 2008, with 20 completed and submitted job applications.

On April 25, 2008, defendant appeared pro se and informed the trial court he was unemployed. However, defendant failed to present any job applications to the court.

In May 2008, the State filed "A Petition For Rule To Show Cause Indirect Civil Contempt," alleging defendant willfully and contumaciously violated an order of the trial court by failing to return to court on April 25, 2008, with 20 completed and submitted job applications.

In June 2008, the trial court held a hearing on the State's petition. Defendant appeared pro se and admitted he had failed to bring the job applications to court. The court found defendant in willful contempt of court for failing to obey the March 14, 2008, order. The court then ordered defendant to purge himself of contempt by reappearing in court each weekday morning at 8:45 a.m. with a completed and submitted job application until he obtained employment.

Between June 20, 2008, and July 7, 2008, defendant

appeared each weekday with a completed and submitted job application.

On July 8, 2008, defendant's case was reassigned to Judge Chris Freese due to the retirement of Judge Stephen Peters. Defendant continued to appear each weekday with a job application through July 29, 2008.

On August 1, 2008, defendant appeared pro se and notified the trial court he was not currently employed. The court sua sponte ordered defendant to obtain full-time employment by August 25, 2008, or face indirect criminal contempt. The following colloquy took place:

> "THE COURT: Well Mr. Covington, we're going to change tactics here. I'm simply going to order you to get a job and be full-time employed by the next time you come to court. If you are not employed, we are going to go directly to indirect criminal contempt for which, if you are found in indirect criminal contempt, you can be sentenced to six months in the county jail. If you don't wish to work, that's fine, but you will be going to jail when you're found in contempt. I am not going to have you come back into court every week to show you have applied for a

job.  I am ordering you to find full-time employment.  Doesn't matter if it's working at McDonald's; doesn't matter if it's hauling garbage, or mowing yards.  Unless you have a letter from a doctor that says you're incapable of holding any type of employment, I expect you to be employed by the next court date.  Do you understand that?

[DEFENDANT:] I have been coming in everyday [sic], not every week.

THE COURT: And you're coming back again, and the next court date you will either have a job, or we will arraign you on a contempt petition.  I am not going to mess around with this case any further.  Do you understand that?

[DEFENDANT:] NO RESPONSE BY DEFENDANT.

THE COURT: Do you understand that, Mr. Covington?  You either have a job by the next court date, or we go to arraignment on a contempt petition?  Is that clear?

[DEFENDANT:] I thought I was in contempt.  That's why I was here anyway.

THE COURT: Not according to what I show.

It shows here this [case] is set for further proceedings.

[DEFENDANT:] But--

THE COURT: Mr. Johnson[,] what is your understanding of this case?

MR. JOHNSON [(Assistant State's Attorney)]: Judge, it[']s been--we have been reviewing his ability to pay.

[DEFENDANT:] I'm not in contempt.

THE COURT: I don't show a contempt petition on file, unless you're aware of something--

MR. JOHNSON: We have been continuing this case on review of his ability to pay, and [Judge Peters] has been ordering him to come in everyday [sic] with a job application.

THE COURT: All right.  Let's back up. There is a contempt petition on file as of May 1, 2008.  Let's see if there's ever been an entry made on that case.  This file is a mess.

MR. JOHNSON: Judge, on June 18, there was a contempt petition filed.

THE COURT: All right.

MR. JOHNSON: And it was set for review, so that's where we're at--indirect civil contempt.

THE COURT: All right, then, we will simply call the case for sanctions.  Recommendations from the People.

MR. JOHNSON: Judge, the situation was that on the [p]etition for [i]ndirect [c]ivil [c]ontempt of [c]ourt, he did not bring in the 20 completed and submitted job applications, but since that time, he's brought in about 25 job [applications,] so he's complied with what [Judge Peters] wanted, so at this time, it seems I wouldn't be recommending that the sentence be to the DeWitt County [j]ail on that [p]etition for [c]ontempt.

THE COURT: All right.  Show, no sanctions will be imposed.  Court, on its own motion, is going to order the defendant to find full-time employment.  That's 40 hours a week, one or multiple jobs.  If you're not employed by the next court date, we will move forward with indirect criminal contempt for

which you can go to jail for a specific sentence up to six months and be fined up to $500.00. You have until August 25, 2008, at 9 a.m. to be employed full-time. You are ordered to appear that date. If you are not employed full-time, the State will have an [i]ndirect [c]riminal [c]ontempt [p]etition ready to be filed, and we will arraign you on that contempt petition."

On August 25, 2008, defendant appeared pro se and informed the trial court he had not yet obtained employment. The court ordered the State to file a petition for indirect criminal contempt.

On August 26, 2008, the State filed a petition titled "Petition For Rule To Show Cause Indirect Criminal Contempt," alleging defendant willfully and contumaciously violated an order of the trial court by failing to obtain full-time employment by August 25, 2008.

On November 5, 2008, the trial court held a hearing on the State's petition. Defendant appeared pro se. Neither the State nor defendant presented any evidence. However, the State asked the court to take judicial notice of the previous proceedings. The court found defendant in indirect criminal contempt, sentenced him to six months in jail, with day-for-day credit to

apply, and ordered him to pay $796.50 in jail-meal fees.

At the conclusion of the hearing, the trial court informed defendant he would have 30 days from his release from jail--until "February 25, 2009, at 8:30"--to find full-time employment or else the court would again find him in contempt and send him back to jail for another six months.  The court stated the following:

> "[T]he court is going to take this ap-
> proach.  We're going to have indirect crimi-
> nal contempt petitions filed every [four]
> months; because if you're sentenced on every
> one of them to [six] months in jail, you're
> going to serve [three] months.  I'll give you
> another 30 days to find a job.  We'll come
> back.  We'll start the process over.  If
> you're found in contempt again, you [will] go
> back to jail for another [six] months.  And
> we will do this [for] as long as I am sitting
> here or until you get a job and pay what you
> owe."

On November 12, 2008, the trial court entered a written order directing defendant "to be employed full time" on February 25, 2009.

This appeal followed.

II. ANALYSIS

On appeal, defendant argues (1) the trial court lacked subject-matter jurisdiction to find him in contempt for violating a condition of the December 2005 supervision order because his supervision had been discharged; (2) the court's use of improper contempt procedures violated his due-process rights; and (3) because of the trial judge's lack of impartiality, if this court remands the case, it should be remanded to a different judge.

A. Standard of Review

We will not reverse a court's contempt finding "unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." In re Marriage of Charous, 368 Ill. App. 3d 99, 108, 855 N.E.2d 953, 961 (2006). "'"Abuse of discretion" means clearly against logic; the question is not whether the appellate court agrees with the [trial] court, but whether the [trial] court acted arbitrarily, without employing conscientious judgment, or whether, in view of all the circum-stances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.'" Long v. Mathew, 336 Ill. App. 3d 595, 600, 783 N.E.2d 1076, 1080 (2003), quoting State Farm Fire & Casualty Co. v. Leverton, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094, 1096 (2000). A finding is against the manifest weight of the evidence only if (1) the opposite conclusion is clearly evident or (2) the

- 11 -

trial court's finding is unreasonable, arbitrary, or not based on the evidence presented. <u>Best v. Best</u>, 223 Ill. 2d 342, 350, 860 N.E.2d 240, 245 (2006).

B. Jurisdiction in the Contempt Proceedings

Defendant first argues the trial court lacked jurisdiction to enter the contempt order. Specifically, defendant contends that because the petition for rule to show cause related to an employment condition found in paragraph eight of the certificate of conditions to the discharged supervision order, the court lacked subject-matter jurisdiction to enforce the condition. Paragraph eight of the December 2005 certificate of conditions required defendant, as a condition of supervision, to "[w]ork or pursue a course of study or vocational training as directed by the [p]robation [o]ffice."

The State responds, arguing defendant's jurisdictional argument erroneously relies on paragraph eight's boilerplate language. The State maintains nothing in the record shows the trial court ordered defendant "to get a job and be full-time employed" to satisfy the paragraph-eight language. Instead, the State argues the court ordered defendant to get a job to pay the jail-meal fees.

As long as the trial court has jurisdiction over the defendant and subject matter, the court also has jurisdiction to enter an order of contempt. <u>People v. Draves</u>, 149 Ill. App. 3d

657, 659, 500 N.E.2d 1072, 1073 (1986).  Generally, a court's jurisdiction ends with the expiration of probation.  People v. Wilson, 293 Ill. App. 3d 339, 341, 687 N.E.2d 1182, 1184 (1997).  "Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time."  People v. Davis, 156 Ill. 2d 149, 155, 619 N.E.2d 750, 754 (1993).

We initially note that in this case, the trial court placed defendant on supervision.  "'Supervision' means a disposition of conditional and revocable release without probationary supervision, but under such conditions *** as are imposed by the court, at the successful conclusion of which disposition the defendant is discharged and a judgment dismissing the charges is entered."  730 ILCS 5/5-1-21 (West 2006).  "'Conditional [d]ischarge' means a sentence or disposition of conditional and revocable release without probationary supervision but under such conditions as may be imposed by the court."  730 ILCS 5/5-1-4 (West 2006).  "'Probation' means a sentence or disposition of conditional and revocable release under the supervision of a probation officer."  730 ILCS 5/5-1-18 (West 2006).  We agree with defendant that for the purposes of establishing jurisdiction, supervision, conditional discharge, and probation are identical.  Each provision provides for a sentence during which time a defendant is under the jurisdiction of the court, subject

- 13 -

to conditions imposed by the court, but is not incarcerated (unless as a condition thereof).

On November 7, 2007, the trial court revoked defendant's supervision, entered a judgment of conviction, and sentenced defendant to 90 days in jail. The court also ordered defendant to pay $398.25 in jail-meal fees. The November 8, 2007, docket entry shows the court entered a written order unsuccessfully discharging defendant's supervision. At the conclusion of the November 7, 2007, hearing, the following colloquy took place:

"MR. LAMKIN [(defense counsel)]: Just to clarify, supervision is revoked, and once he's released from custody, this matter will be over with?

THE COURT: That is correct. Show, the remaining balance of any fine and costs are remitted. Meal fees set at $398.25. Cause continued to March 14 at 10:00 a.m. for review."

Defendant contends that because the petition for rule to show cause related to a condition of the terminated order of supervision--i.e., to find employment, as opposed to paying the jail-meal fees--the court lacked subject-matter jurisdiction to enforce the employment condition of the supervision order. We

disagree.

However, the trial court's order did not relate to the original supervision order. Nowhere in the record is there evidence that the court's order related to directions from the probation office or the paragraph-eight language of the supervision order. Further, as the State correctly points out, the record does not show the probation office ever directed defendant to obtain employment.

Here, the jail-meal fees originated from defendant's incarceration following his unsuccessful discharge from supervision. As stated, on November 7, 2007, the trial court revoked defendant's supervision and sentenced defendant to 90 days in jail. As part of its sentence, the court ordered defendant to pay $398.25 in jail-meal fees. As a result, the jail-meal fees were ordered subsequent to the discharge of defendant's supervision. Further, after defendant had served his 90-day sentence, the court called the case for hearing on defendant's ability to pay the $398.25 jail-meal fees. The March 14, 2008, docket entry shows the following:

> "[The People] appear by SA Jerry Johnson.
> [Defendant] appears pro se. Cause called for
> [hearing] on ability to pay. [Defendant]
> states he is unemployed and on [motion] of
> [the People] cause reset for further review

to April 25, 2008, at 10 a.m.  [Defendant]

ordered to return said date with 20

completed/submitted job [applications]."

On May 7, 2008, the State filed its petition for a finding of indirect civil contempt.  The State's petition alleged defendant had willfully and contemptuously failed to submit 20 completed-submitted job applications on April 25, 2008.  The petition did not allege defendant willfully and contemptuously failed to obey the employment conditions of the original supervision order.  In fact, the trial court never referenced the original supervision order during any of the contempt proceedings.

On August 1, 2008, the trial court ordered defendant to get a full-time job to ensure he obeyed the court's November 7, 2007, order to pay the jail-meal fees.  At the November 5, 2008, hearing on the State's petition, the court stated the following:

"If you're found in contempt again, you [will] go back to jail for another [six] months.  And we will do this [for] as long as I am sitting here or until you get a job and pay what you owe."  (Emphasis added.)

In this case, the trial court's order to obtain employment to pay the jail-meal fees was unrelated to the original supervision order.  The record does not support the position that

the court was attempting to enforce any condition of the December 2005 supervision order. Instead, the court was using its power of contempt to ensure that defendant would pay the court-ordered jail-meal fees. See In re Marriage of Betts, 200 Ill. App. 3d 26, 44, 558 N.E.2d 404, 416 (1990) (sanctions for criminal contempt are appropriate inter alia, to ensure court orders are obeyed). Accordingly, the trial court had jurisdiction to consider the State's petition for indirect criminal contempt.

### C. The Trial Court's Procedure

Defendant next argues the procedure used by the trial court to find him in indirect criminal contempt was improper. Specifically, defendant contends the court's procedure failed to afford him the necessary due process. Defendant argues (1) he was entitled to notice; (2) he was entitled to have proof that his failure to pay the fee was willful; (3) he was not advised of his right to counsel; (4) the court's procedure of taking judicial notice of the previous proceedings (a) denied him his right to cross-examine witnesses and (b) eliminated his right against self-incrimination; and (5) the court impermissibly shifted the State's burden of proof to defendant by asking him to show what he had done to seek employment.

The State argues defendant was only entitled to minimal due process. Specifically, the State contends that although the trial court found defendant in indirect criminal contempt of

- 17 -

court, the charge against defendant was coercive rather than punitive and thus more in the nature of an adjudication of indirect civil contempt.

Defendant replies, arguing that because defendant was not afforded any kind of purge procedure essential in civil contempt proceedings, the State's characterization of defendant's action as indirect civil contempt is improper.

### 1. Indirect Criminal or Civil Contempt of Court

The penalties in a civil contempt case "serve only to coerce the contemnor to comply with a court order, and they must cease when the contemnor complies." In re Marriage of Carpel, 232 Ill. App. 3d 806, 823, 597 N.E.2d 847, 859 (1992); Pancotto v. Mayes, 304 Ill. App. 3d 108, 111, 709 N.E.2d 287, 289 (1999) ("Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order").

Criminal contempt is retrospective in nature and consists of punishing for doing what has been prohibited or not doing what has been ordered. Betts, 200 Ill. App. 3d at 46, 558 N.E.2d at 417; see People v. Lindsey, 199 Ill. 2d 460, 468, 771 N.E.2d 399, 406-07 (2002) ("Criminal contempt sanctions are retrospective in nature and punish the contemnor for past acts

which he cannot undo").

In this case, the trial court did not impose sanctions to compel a future act. Instead, defendant's six-month sentence clearly sought to punish him for his prior conduct, which he cannot undo--namely his failure to be employed full time on August 25, 2008. In addition, defendant's imprisonment was for a definite period of time. The record does not show defendant "held the keys to his cell" by being able to purge himself of the contempt. As the State correctly points out, holding the keys to one's jail cell is a fundamental characteristic of indirect civil contempt. See In re Marriage of Logston, 103 Ill. 2d 266, 289, 469 N.E.2d 167, 177 (1984) ("the civil contemnor must be provided with the 'keys to his cell'"). However, the court never indicated defendant would be immediately released upon payment of the jail-meal fees.

Moreover, the State's petition, the trial court's order, and the record show the November 5, 2008, contempt charge was titled and continuously referenced as indirect criminal contempt. We additionally note that prior to imposing sentence, the court asked defendant if he had "[a]nything [he] want[ed] to say about what the punishment should be here." (Emphasis added.) As a result, we find the contempt in this case is properly characterized as criminal in nature.

## 2. Procedural Requirements

Before a defendant may be sanctioned for indirect <u>civil</u> contempt, he or she must be "accorded due process of law with respect to the contempt charges." <u>Betts</u>, 200 Ill. App. 3d at 52, 558 N.E.2d at 421. "In a civil contempt proceeding, the contemnor is only entitled to minimal due process, consisting of notice and an opportunity to be heard." <u>In re Marriage of Cummings</u>, 222 Ill. App. 3d 943, 948, 584 N.E.2d 900, 903 (1991). "The notice must, of course, contain an adequate description of the facts on which the contempt charge is based and inform the alleged contemnor of the time and place of an evidentiary hearing on the charge within a reasonable time in advance of the hearing." <u>Betts</u>, 200 Ill. App. 3d at 53, 558 N.E.2d at 422.

However, a person charged with indirect <u>criminal</u> contempt is "entitled to constitutional protections that are afforded to any other criminal defendant." <u>Lindsey</u>, 199 Ill. 2d at 471, 771 N.E.2d at 408.

> "One charged with indirect criminal contempt
> is entitled to '"*** know the nature of the
> charge against him, to have it definitely and
> specifically set forth by citation or rule to
> show cause, and *** [have] an opportunity to
> answer ***."' [Citation.] Also applicable
> to respondent in an indirect criminal con-
> tempt proceeding are the privilege against

- 20 -

self-incrimination, the presumption of inno-
cence, and the right to be proved guilty
beyond a reasonable doubt."  <u>Betts</u>, 200 Ill.
App. 3d at 58, 558 N.E.2d at 425.

### a. Notice

"[D]ue process requires that before criminal sanctions
may be imposed upon a respondent as a result of indirect criminal
contempt proceedings, notice must be provided to the alleged
contemnor that such sanctions are being sought and might be
imposed."  <u>In re Marriage of Alltop</u>, 203 Ill. App. 3d 606, 616,
561 N.E.2d 394, 401 (1990).

> "Because a respondent in an indirect
> criminal contempt proceeding enjoys the priv-
> ilege against self-incrimination, he may not
> be called by the petitioner to testify.
> Accordingly, a petition initiating indirect
> criminal contempt proceedings ought not have
> the title 'Petition for Rule To Show Cause,'
> the designation commonly (and appropriately)
> used for a petition initiating an indirect
> <u>civil</u> contempt proceeding; instead, a peti-
> tion initiating an indirect criminal contempt
> proceeding ought to have the title 'Petition
> for Adjudication of Criminal Contempt.'  By

- 21 -

definition, if a respondent has a right not to testify, he cannot be required to 'show cause' why he should not be held in indirect criminal contempt. Instead, the burden is on the petitioner to prove the charges in the petition beyond a reasonable doubt. An ancillary benefit of using such a title would be to force court and counsel into a recognition that such petitions differ from routine petitions for rules to show cause and require different procedural steps." (Emphasis in original.) Betts, 200 Ill. App. 3d at 58-59, 558 N.E.2d at 425.

Thus, "a pleading entitled 'petition for rule to show cause' is not sufficient to provide the due process to which an alleged criminal contemnor is entitled." Alltop, 203 Ill. App. 3d at 616, 561 N.E.2d at 401. Instead, the due-process "requirement can be met by entitling the initial pleading, 'petition for adjudication of criminal contempt.'" Alltop, 203 Ill. App. 3d at 616, 561 N.E.2d at 401.

In this case, the State did not file a petition for adjudication of criminal contempt. Instead, the State filed a petition for rule to show cause. As a result, the procedure used failed to provide defendant with proper notice that he faced

criminal sanctions.

### b. Burden of Proof

In an indirect criminal contempt proceeding, "the burden is on the [State] to prove the charges in the petition beyond a reasonable doubt." Betts, 200 Ill. App. 3d at 59, 558 N.E.2d at 425. To sustain a finding of indirect criminal contempt the State must prove beyond a reasonable doubt (1) the existence of a court order, and (2) willful violation of that order. People v. Totten, 118 Ill. 2d 124, 138, 514 N.E.2d 959, 965 (1987). A defendant in an indirect criminal contempt proceeding has a right against self-incrimination. People v. Budzynski, 333 Ill. App. 3d 433, 439, 775 N.E.2d 275, 281 (2002). Accordingly, a defendant cannot be required to "'show cause' why he should not be held in contempt," because it "amounts to an impermissible shifting of the burden of proof." People v. Ramsell, 266 Ill. App. 3d 297, 301, 640 N.E.2d 975, 978 (1994).

During the criminal contempt hearing, neither the State nor defendant presented any evidence. At the State's request, the trial court took judicial notice of the previous proceedings. At the hearing, the court sua sponte asked defendant why he did not have employment and why he should not be held in contempt. The court also asked defendant if he had any witnesses or evidence he wanted to present in opposition of the State's petition. The court stated the following: "I'll direct the sheriff to

retrieve whatever documents you want to bring to court to show why you didn't have a job when you were ordered to have a job on that court date."  During the hearing the court asked defendant the following: "Now, you're telling me you have no evidence to present, Mr. Covington; is that correct?"  Defendant responded, explaining, "Not as far as working, no.  No, sir[,] except that the year will be up in [two] days.  And they said I could go back to [work,] but I don't have any evidence to show you that."  Here, the court repeatedly required defendant to show what he had done to seek employment.  We find this procedure impermissibly shifted the State's burden of proof.

### c. Defendant's Right to Counsel

A person charged with indirect criminal contempt is entitled to the right to counsel.  Lindsey, 199 Ill. 2d at 471, 771 N.E.2d at 408.  However, at no point during the indirect criminal contempt proceeding was defendant admonished of his right to counsel.  Instead, during the hearing, the trial court's references to counsel are limited to the following statements: "Defendant is pro se.  He does not have counsel, and he did not request the public defender" and "This is on a [p]etition for [i]ndirect [c]riminal [c]ontempt.  Defendant has been, indicated he's going to represent himself.  Do you still intend to represent yourself[,] Mr. Covington?"  In this case, the court's references to the public defender and defendant's pro se appear-

ance were insufficient to properly admonish him of his right to have counsel present during the criminal proceeding.

In this case, we find the trial court erred in entering a criminal-contempt judgment against defendant without providing the necessary criminal procedural rights. See Betts, 200 Ill. App. 3d at 59-60, 558 N.E.2d at 426; Alltop, 203 Ill. App. 3d at 614-15, 561 N.E.2d at 399-400.

### D. Defendant's Impartiality Claim

Defendant last argues this case should be remanded to a different judge. Specifically, defendant contends the trial court's comments at the conclusion of the November 5, 2008, hearing demonstrate the court had lost its impartiality and judicial restraint with respect to defendant.

Supreme Court Rule 366(a)(5) allows a reviewing court to make any order that a case may require. 155 Ill. 2d R. 366(a)(5). This authority includes the power to remand the case to a different judge. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 263, 807 N.E.2d 439, 447 (2004).

"A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice." Eychaner v. Gross, 202 Ill. 2d 228, 280, 779 N.E.2d 1115, 1146 (2002). "'Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe that the court has a personal bias for or against a

litigant.'" <u>Raintree Homes</u>, 209 Ill. 2d at 263, 807 N.E.2d at 448, quoting <u>Eychaner</u>, 202 Ill. 2d at 280, 779 N.E.2d at 1146.

In this case, defendant bases his argument that the trial court was biased against him on the following comments:

"[T]he court is going to take this approach. We're going to have indirect criminal contempt petitions filed every [four] months; because if you're sentenced on every one of them to [six] months in jail, you're going to serve [three] months. I'll give you another 30 days to find a job. We'll come back. We'll start the process over. If you're found in contempt again, you [will] go back to jail for another [six] months. And we will do this [for] as long as I am sitting here or until you get a job and pay what you owe."

Because defendant bases his contention <u>solely</u> on the trial court's comment, defendant failed to show the court was biased against him.

### III. CONCLUSION

For the reasons stated, we vacate the trial court's order finding defendant in indirect criminal contempt and remand for further proceedings not inconsistent with this opinion.

Vacated and remanded with directions.

TURNER and POPE, JJ., concur.