NOTICE
Decision filed 04/17/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210333-U

NO. 5-21-0333

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 19-CF-6 |
| | ) | |
| ANTONIO D. WATSON, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concur in the judgment.

**ORDER**

¶ 1    *Held*:   Where the trial court's order of probation included a written provision that required completion of an anger management program, the sentencing order was unambiguous, and we affirm the trial court's order revoking the defendant's probation for failing to complete the anger management program.

¶ 2    On January 22, 2019, after pleading guilty to one count of aggravated battery (720 ILCS 5/12-3.05 (West 2016)), a Class 3 felony, the trial court sentenced the defendant to 18 months of probation. The defendant was ordered to complete an anger management program and to pay a monetary fine, costs, and surcharges totaling $1112. Before the probationary period concluded, the State filed a petition to revoke probation on the basis that the defendant had neither completed the anger management program nor paid the fine. On May 7, 2021, the trial court revoked the

1

defendant's probation and sentenced him to 42 months of incarceration in the Illinois Department of Corrections, plus one year of mandatory supervised release.

¶ 3                                                         I. Background

¶ 4        On January 3, 2019, the defendant was in the Jackson County jail and got into a fight with another inmate, resulting in him being charged with aggravated battery on January 4, 2019. On January 22, 2019, he had entered into a negotiated plea for 18 months of probation, with conditions. During the plea hearing, the trial court explained that a part of the defendant's proposed probation sentence included a requirement that he successfully complete an anger management program "at the direction of the Probation Department." The court explained that the department would help to advise him about the anger management program, but that he would need to complete it and return all paperwork to the probation department. The court advised the defendant that he was eligible for an extended term of 10 years' imprisonment. Pursuant to the terms of the negotiated plea, the court sentenced the defendant to 18 months of probation and further admonished him that it was important to remain in compliance and complete "all things" because if he failed to do so, the State could file a petition to revoke his probationary status.

¶ 5        The written sentencing order dated January 22, 2019, was a preprinted form. The order set the defendant's probationary period at 18 months beginning on the date of the order. The order form contained 19 possible conditions that could be selected as part of the defendant's individualized sentence. Item 19 on the list was left open for an individualized condition to be added. In this case, item 19 was checked, and the defendant was ordered as follows: "Successfully complete anger management classes."

¶ 6        The defendant attended some anger management counseling classes with a Centerstone facility. He obtained an assessment and attended classes on July 8, 2019, July 15, 2019, July 23,

2

2019, September 17, 2019, and October 1, 2019. On October 21, 2019, the defendant was arrested and detained in the county jail on a separate case. The defendant's next scheduled counseling class on October 22, 2019, was cancelled since he was in the Jackson County jail. The defendant was released from the Jackson County jail on September 29, 2020.

¶ 7    On December 11, 2019, the State filed its petition to revoke probation, alleging that the defendant had violated the conditions of his probation in two ways. First, the defendant "failed to provide proof of completion of Anger Management classes as directed"; and second, the defendant "failed to make payments as directed." The State's petition was filed between 10 and 11 months after the probationary sentence was entered—approximately 7.5 months before the probationary sentence would naturally end in July 2020. The defendant was served with the petition and counsel was appointed to represent him.

¶ 8    On June 29, 2020, the State's petition proceeded to hearing. Because the defendant had paid all the assessed fines, costs, and surcharges, the State withdrew its allegation that the defendant had failed to pay but continued with its allegation that the defendant had not completed his anger management program.

¶ 9    Sherry Reichert, a Jackson County Probation Department officer, testified that she had been assigned as the defendant's probation officer. Reichert confirmed that as conditions of the sentence, the defendant was to successfully complete an anger management program and to pay court-ordered fines, costs, and fees. Reichert testified that upon the defendant's intake with the probation department in early February 2019, the defendant was directed to immediately complete his anger management assessment. Reichert stated that the defendant was advised that he needed to start the anger management program on the following dates: February 17, 2019, March 19, 2019, and May 21, 2019. In August 2019, the defendant informed Reichert that he attended an anger

3

management session. Reichert then testified that on September 4, 2019, the defendant told her that he did not want to complete the anger management program.[1] Reichert testified that Centerstone verbally confirmed that the defendant had completed an anger management assessment and three classes. Centerstone reported that the last class the defendant attended was on September 25, 2019. Thereafter, Centerstone discharged the defendant due to his failure to continue with the program.

¶ 10    At the conclusion of the hearing, the trial court found that the State had established by a preponderance of the evidence that the defendant had not completed the anger management program. The court revoked the sentence of probation and set the case for resentencing.

¶ 11    On September 29, 2020, the defendant posted bond and was released from jail in the other case. The record contains no documentary or testimonial evidence that the defendant received additional anger management counseling services from Centerstone or any other provider during the year that the defendant remained in jail on the other charge.

¶ 12    The sentencing hearing was held on May 7, 2021. The defendant's attorney noted that the defendant had completed the anger management program at Centerstone as memorialized by a certificate filed on January 11, 2021. The program was completed after the defendant's probation was revoked, and after his original probationary period ended. The State argued that after the petition to revoke had been filed, there were two continuances at the request of defense counsel before the revocation hearing was held. The State suggested that the defendant had the opportunity to complete his anger management program before the hearing on the petition to revoke. At the conclusion of the sentencing hearing, the trial court sentenced the defendant to 42 months of

---

[1]Reichert testified that the defendant made this statement. However, she did not testify if the defendant made this statement to her, or if a Centerstone employee told Reichert that the defendant made this statement. In argument, the defendant's attorney suggests that the defendant told Reichert that he did not wish to continue with the anger management program.

imprisonment and one year of mandatory supervised release upon completion of the prison sentence.

¶ 13    On June 2, 2021, the defendant filed a motion to withdraw his plea and vacate his sentence and a separate motion to reconsider his sentence. Both motions were called for hearing on September 22, 2021. The court denied the motion to withdraw the plea, and then turned to the defendant's motion to reconsider his sentence. After reviewing the transcript of the probation revocation hearing, and arguments of counsel, the trial court denied the defendant's motion.

¶ 14                                            II. Analysis

¶ 15    The defendant appeals from the trial court's June 29, 2020, order revoking his probation. The order revoking his probation was entered less than one month before the probationary period expired. At issue is whether the trial court erred in revoking the defendant's probation for failing to complete the court-ordered anger management program. The defendant argues that because the written probation order contained no set timeline by which he needed to complete the anger management program, the deadline was presumptively the end of the probationary period. The defendant therefore contends that the probation order was ambiguous.

¶ 16    The State agrees that the probation order did not specify a date by which the defendant had to complete the anger management program but argues that the defendant's lack of compliance was unrelated to the lack of a deadline. The State contends that once it became clear that the defendant did not wish to continue with his anger management program, "the State was under no obligation to wait the entire probation period in the hope that he would eventually decide to comply with the court's order."

¶ 17    A defendant sentenced to probation, whose probation the State petitions to revoke, must be provided with substantial justice. *People v. Saucier*, 221 Ill. App. 3d 287, 291 (1991) (citing *People*

5

*v. White*, 33 Ill. App. 3d 523, 528 (1975)). At a probation revocation proceeding, the defendant is not entitled to the same protections that a defendant standing trial for the substantive criminal offense is provided. *Id.* (citing *People v. Cox*, 197 Ill. App. 3d 239, 243-44 (1990)). "[N]evertheless[,] [he is] entitled to 'minimal due process.' " *Id.* (quoting *People v. Hill*, 208 Ill. App. 3d 887, 891 (1991)).

¶ 18    A sentence of probation is construed in contractual terms between the defendant and the criminal justice system. *Id.* "[B]ecause of the severity of the consequences if the agreement is broken, it is important that there be a definite memorialized understanding of what is required of defendant." *Id.* at 291-92 (citing *People v. Brown*, 137 Ill. App. 3d 453, 455 (1985)). "Due process requires that a person know in advance what behavior is expected or prohibited." *Id.* at 292. Therefore, a condition of probation must be phrased in a manner by which an average person would understand the meaning of that condition. *Id.* (citing 3 W. LaFave & J. Israel, Criminal Procedure § 25.3(a), at 145 (1984)). If a probation order contains an ambiguous condition, that ambiguity "breaches the rule that a defendant is entitled to know precisely what his sentence is." (Internal quotation marks omitted.) *People v. Wilson*, 293 Ill. App. 3d 339, 343-44 (1997).

¶ 19    Section 5-6-3(d) of the Unified Code of Corrections states: "An offender sentenced to probation *** shall be given a certificate setting forth the conditions thereof." 730 ILCS 5/5-6-3(d) (West 2018). "Accordingly, if a probation order fails to inform a defendant of the required and prohibited conduct, his failure to comply cannot support a petition to revoke." *People v. Clark*, 313 Ill. App. 3d 957, 960 (2000) (citing *People v. Taube*, 299 Ill. App. 3d 715 (1998)). However, not every detail regarding the required and prohibited conduct can be listed. *Id.* When the written order contains a probationary requirement, the trial court can verbally indicate the terms for implementing that requirement. *Id.*

6

¶ 20 We will not overturn a trial court's decision to revoke a defendant's probation unless the decision is contrary to the manifest weight of the evidence. *Id.* at 959. "A finding is against the manifest weight of the evidence only if a contrary result is clearly evident." *Id.* at 960 (citing *People v. Durk*, 195 Ill. App. 3d 335 (1990)).

¶ 21 In arguing that the trial court's probation order was ambiguous, the defendant contends that this case is analogous to *People v. Wilson*. In *Wilson*, the defendant's order of probation contained a condition that required him to complete 75 hours of substance abuse treatment and aftercare, and to attend three Alcoholics Anonymous meetings per week for 30 weeks. *Wilson*, 293 Ill. App. 3d at 340. The defendant did not comply with the probation conditions, and the trial court conducted three remission hearings. *Id.* at 340-41. After each remission hearing, the defendant was ordered to serve jail time. *Id.* Ultimately, the term of the defendant's probation ended, and 45 days later, the State filed a petition for indirect civil contempt against the defendant because he had not completed the mandated substance abuse treatment and the Alcoholics Anonymous meetings requirements. *Id.* at 341. The trial court found the defendant in indirect civil contempt and required him to complete the conditions of probation or face additional jail time. *Id.*

¶ 22 The appellate court reversed the trial court in *People v. Wilson* and found ambiguity in the probation order, noting that the probation order did not indicate whether the two substance-abuse-related conditions were intended to survive the probationary period. *Id.* at 343. The court noted that these probation conditions could have been intended as alternatives to the 120 days of jail time that were foreclosed because the defendant had already served the entire 120 days. *Id.* Ultimately, the appellate court found that this uncertainty breached the rule that a defendant is entitled to know the precise details of his sentence. *Id.* at 343-44 (quoting *People v. Brown*, 142 Ill. App. 3d 712, 714 (1986)).

7

¶ 23    We find that this case is factually distinguishable from *People v. Wilson*. Here, the probation order clearly outlined the tasks to be completed during the probationary period. The probation order specifically mandated completion of an anger management program. The defendant started the program during the probationary period. The defendant knew at the beginning of his probationary term to successfully complete his probation, he had to pay his fines, court costs, and surcharges and complete the anger management program. Although the defendant had begun the anger management program, upon being arrested and jailed on another charge, he discontinued efforts to complete the program. The defendant asked the court to continue the revocation hearing twice. Both requests were granted. Despite the two continuances, the defendant made no effort to resume his anger management program before the revocation hearing. However, the defendant managed to pay his outstanding fines, costs, and surcharges before the probation revocation hearing.

¶ 24    The State argues that we should follow the reasoning expressed by the appellate court in *People v. Clark*. In *Clark*, the defendant was sentenced to probation after pleading guilty to unlawful possession of a controlled substance. *Clark*, 313 Ill. App. 3d at 958. A condition of his probation required the defendant to " 'obtain a drug & alcohol evaluation and comply with the recommendations therein.' " *Id.* At the plea hearing, the trial court specifically referenced this condition and verbally instructed the defendant to return on January 11, 1996, with proof that he had obtained the drug and alcohol evaluation. *Id.* On January 11, 1996, the defendant returned to court and advised that his evaluation was scheduled for that afternoon. *Id.* The court continued the case and set a new date for February 15, 1996. *Id.* The defendant did not appear in court for that hearing, and one month later, the defendant stated that he still had not obtained that evaluation. *Id.* The State filed its petition to revoke the defendant's probation, and the hearing was set for June 7,

1996, but the defendant failed to appear. *Id.* The trial court granted the defendant 30 days to " 'make great strides' " toward complying with this condition. *Id.* On February 10, 1997, the defendant's probation was revoked and the court resentenced him to a new term of probation with the same requirement that he obtain a drug and alcohol evaluation. *Id.* The trial court instructed the defendant to return on March 27, 1997, with proof of completion of this evaluation. *Id.* The defendant did not obtain the evaluation but stated that he was scheduled for that appointment on April 15, 1997. *Id.* at 959. The trial court gave the defendant until May 8, 1997, to obtain the evaluation. *Id.* The defendant did not do so, citing his inability to afford the fee associated with the evaluation. *Id.* The State filed a new petition to revoke. *Id.* At the hearing, the trial court revoked the defendant's probation. *Id.*

¶ 25    In *People v. Clark*, the appellate court found that the trial court's verbal addition of dates for completion of the evaluation was appropriate, and that the defendant clearly understood that the completion of the evaluation was mandatory. *Id.* at 960. The defendant argued that the probation order was ambiguous because it lacked a set date for completion of the drug and alcohol evaluation. *Id.* The appellate court found this argument to be disingenuous because the trial court had set mandatory deadlines for completion of this condition, even though there was more than one year left in the probationary period. *Id.*

¶ 26    As in *People v. Clark* (*id.*), here the trial court made the defendant aware that completion of a mandated program was required for compliance with the sentence of probation. A trial court's verbal order, including directions to the defendant about implementing and completing a probationary requirement, is appropriate. *Id.* The trial court informed the defendant that completion of his anger management program was "at the direction of the Probation Department," that the probation department would advise him about the anger management program, and that

9

he was required to complete the program and return the paperwork to the probation department. The trial court's verbal statements made no change to the end of the probation period and did not set a different timeline for completion of this task. As the court concluded in *People v. Clark*, we find that the defendant's ambiguity argument is disingenuous.

¶ 27    We find that this case is also factually similar to *People v. Neckopulos*, 284 Ill. App. 3d 660 (1996). In *Neckopulos*, the defendant was ordered to undergo substance abuse treatment as part of her probation. *Id.* at 662. The defendant began treatment, but then voluntarily stopped. *Id.* The trial court revoked her probation. *Id.* at 663. On appeal, the defendant argued that her probation violation occurred before she had a "meaningful" opportunity to begin treatment. *Id.* Noting that the defendant had started the treatment program, the appellate court stated that the defendant's lack of progress had nothing to do with an unavailability of the treatment program but was the result of her failure to take advantage of the treatment opportunity presented. *Id.* at 664.

¶ 28    We conclude that the defendant's argument that the probation order was ambiguous is without merit. The period of probation had a set ending date, and as completion of the anger management program was a required condition of the defendant's probation, the completion date for this program was unquestionably the end of the probationary period. The defendant's probation officer testified that she encouraged the defendant to immediately start the program in early February 2019. Instead, the defendant waited months to begin the process, and then informed his probation officer that he did not want to complete the program. The defendant participated in five anger management sessions between July 8, 2019, and October 1, 2019.

¶ 29    The defendant was arrested and jailed in a different case on October 21, 2019. The State filed the petition to revoke in December 2019, approximately 7.5 months before the conclusion of the probationary period. The defendant was personally served with this petition while he was in

jail, and thus was on notice that his compliance with the mandated anger management program was at issue. An attorney was appointed to represent him in the probation revocation process. There was no evidence that the defendant made any efforts to complete anger management sessions through the original provider or through an alternate program while he remained in jail.

¶ 30    The defendant knew exactly what he needed to complete before the expiration of his probation in July 2020. In fact, although he was in jail, the defendant paid the $1112 monetary fine, costs, and surcharges before the hearing on the State's petition to revoke, resulting in the withdrawal of this allegation from the court's consideration. The petition to revoke was originally scheduled for hearing on February 24, 2020. On that date, the court continued the hearing at the defendant's request, ultimately setting the hearing on June 15, 2020. On that date, the hearing on the petition to revoke was again continued at the defendant's request. Despite the two continuances, the defendant failed to make additional efforts to complete the anger management program before the hearing on the petition to revoke was held on June 29, 2020.

¶ 31    From our review of the record, we conclude that the defendant was aware of the requirement that he complete the anger management program within the probationary period and that the sentencing order was unambiguous. Although the trial court revoked the defendant's probation shortly before the probation period expired, we do not find that this fact necessitates a finding that the order was ambiguous. The defendant simply discontinued his efforts to complete the anger management program while he was in jail. We find that the defendant's failure to complete the anger management program had nothing to do with an alleged ambiguity about the deadline to complete the program but was instead the result of his own failure to make necessary efforts to complete the program during the probationary period. A decision to ignore the terms of a probation order does not necessitate a finding that those terms are ambiguous.

11

¶ 32   We confirm that there is no rule requiring the State to wait until the probationary period expires to file a petition to revoke. We note that when the defendant paid the assessed fines, costs, and surcharges before the revocation hearing, the State dropped that basis for its petition to revoke. The defendant decided to wait to complete the anger management program until *after* his probationary period expired. Accordingly, we find that the trial court's order revoking the defendant's probation was not contrary to the manifest weight of the evidence. *Clark*, 313 Ill. App. 3d at 959.

¶ 33                                III. Conclusion

¶ 34   For the reasons stated, we affirm the judgment of the Jackson County circuit court.


¶ 35   Affirmed.